AO 91 (Rev. 11/11) Criminal Complaint     Approved/Dated by: WM  6/7/2022

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

| United States of America | ) |
|---|---|
| v. | ) |
| RUI WANG | ) Case No. M-22-432-P |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 24, 2022__ in the county of __Oklahoma__ in the __Western__ District of __Oklahoma__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possessession with Intent to Distribute and to Distribute Marijuana |

This criminal complaint is based on these facts:

See attached Affidavit of Task Force Offer Chad Vontungeln, Federal Bureau of Investigations (FBI), which is incorporated and made a part hereof by reference.

☑ Continued on the attached sheet.

_____
Complainant's signature

CHAD VONTUNGELN, Task Force Officer (FBI)
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/7/22

_____
Judge's signature

City and state: Oklahoma City, Oklahoma         GARY M. PURCELL, U.S. Magistrate Judge
Printed name and title

## WESTERN DISTRICT OF OKLAHOMA

## OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA           )
                            )
COUNTY OF OKLAHOMA          )

### AFFIDAVIT

I, Detective Chad Vontungeln, being duly sworn, depose and state as follows:

### EXPERIENCE AND TRAINING

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been since October 2021. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in, *inter alia*, the Controlled Substances Act, Title 21, United States Code. I am currently assigned to the Oklahoma City Division of the FBI. In becoming an FBI Task Force Officer (TFO), I was assigned from my parent agency the Oklahoma City Police Department (OCPD). I have been an Oklahoma City Police officer since May 2001. I completed the Oklahoma City Police academy as well as the field training program. I was assigned to the Oklahoma City Police department IMPACT unit which specializes in street narcotics investigations from 2013 to 2020. I have been trained in a variety of investigative matters, including investigations targeting large criminal enterprises, including the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. I am familiar with the ways drug traffickers conduct their business. My familiarity includes the various means and methods by which drug traffickers import and

1

distribute drugs, their use of cellular telephones, their use of vehicles, and their use of numerical codes and code words to conduct drug transactions.

2.  This Affidavit is being submitted for the limited purpose of securing a criminal complaint and a warrant for the arrest of Rui Mae Wang (Wang) (DOB: XX/XX/1972) for possession with intent to distribute 1,000 kilograms or more of a substance or mixture containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3.  Because this Affidavit is being offered for the limited purpose of obtaining a complaint and arrest warrant, I have set forth only those facts necessary to establish probable cause to support this request. The facts contained in this Affidavit come from reports of other law enforcement officers and discussions with other law enforcement officers involved in this investigation.

## **PROBABLE CAUSE**

4.  On January 22, 2022, Sargent Robert Juby (Sgt. Juby) with the Oklahoma City Police Department (OCPD) Street Narcotics Unit (SNU) received an OKC Crime Stoppers[1] anonymous tip in reference to marijuana being distributed from and stored at 1625 N.W. 22nd Street (the Residence) in Oklahoma City, Oklahoma. The tip stated that an Asian male who drove a white Lexus SUV with a Texas license plate appeared to live and conduct short term traffic at the Residence.

---

1   OKC Crime Stoppers is a law enforcement program whereby citizens may submit anonymous tips to law enforcement through its website (www.okccrimetips.com) or phone number.

2

5. On January 23, 2022, a second Crime Stoppers tip was reported. That tip stated that marijuana was being distributed in black trash bags and boxes from the Residence.

6. Sgt. Juby contacted your affiant about the tip. Your affiant has been working closely with the Oklahoma Bureau of Narcotics' (OBN) Marijuana Enforcement Team (MET) since its inception and is familiar with black market distribution trends for marijuana.

7. Medical marijuana is legal in Oklahoma. The legal growth, processing, and sales of medical marijuana is regulated by the Oklahoma Medical Marijuana Authority Marijuana (OMMA) and OBN. Medical marijuana and its products shall be purchased solely from an Oklahoma-licensed medical marijuana business, and it shall not be purchased from any out-of-state providers. *See* 63 O.S. § 422(C). This investigation has revealed that persons associated with a medical marijuana grow farm, which is legally licensed by OMMA and OBN, have been transporting the harvested marijuana to stash locations in various towns such as Oklahoma City. From the stash locations, the marijuana will be picked up in several different vehicles and then transported and sold to an out of state customer who is more often than not located in a state where marijuana is illegal. These customers are not associated with legally licensed Oklahoma dispensaries or marijuana processors. This conduct is a violation of Oklahoma law and federal law.

8. On February 9, 2022, Sgt. Juby conducted surveillance at the Residence. Sgt. Juby observed a Grey Chevrolet Equinox with Oklahoma tag number JDR729 parked in the driveway of the Residence. A short time later, Sgt. Juby observed the Equinox depart

3

the Residence. Sgt. Juby observed the driver of the vehicle fail to signal his intention to turn which is a violation of Oklahoma state law as well as Oklahoma City ordinance.

9. Thereafter, an OCPD officer conducted a traffic stop on the Equinox. The driver of the Equinox identified himself as Jessie Harris (Harris). Harris provided the officer a piece of paper that stated the vehicle was a OMMA licensed commercial marijuana transporter. This was despite the fact the vehicle that he was operating did not meet a single requirement for that license – the marijuana wasn't properly labeled, the vehicle lacked the required GPS, the marijuana wasn't properly stored, and there was no manifest or logging information maintained inside the vehicle. Harris told officers the vehicle contained marijuana. Officers searched the vehicle based on Harris' statement and the fact that the vehicle did not meet the requirements for a legal medical marijuana transporter. During the search, officers found twenty pounds of marijuana in the vehicle. During the stop, Harris told the officer that he worked for Ty Miner (Miner) of Sooner Extracts in Oklahoma City. Sgt. Juby released Harris at the time of the stop so that he could further investigate into who Miner said he was transporting marijuana for and to determine whether criminal violations had occurred versus a simple OMMA or OBN administrative violation.

10. After the stop, Sgt. Juby contacted Miner. Miner denied knowing Harris, let alone employing him. In my training and experience, the conduct exhibited by Harris has become common in that people with authentic and legal marijuana transporter licenses will use the license as cover to illegally transport and distribute black market marijuana in hopes that law enforcement will think that the transports and dealings are legal and legitimate,

even though they are not. This is similar to the conduct of the marijuana growers with licenses who then transport the marijuana to stash houses and then illegally sell to out-of-state customers.

11. On February 10, 2022, Sgt. Juby conducted a trash pull from the Residence, that is, he collected trash from the Oklahoma City blue trash receptacle that had been placed at the curb line prior to scheduled trash pickup at the Residence. In the trash, Sgt. Juby located seventeen vacuum sealable bags containing marijuana.

12. On February 11, 2022, Sgt. Juby presented a state search warrant affidavit for a warrant to search the Residence to Oklahoma County District Court Judge Lisa Hammond. She read and signed the warrant.

13. That same day, members of the OCPD SNU and your affiant executed the search warrant at the Residence. During that search, officers found 962 pounds of marijuana inside the Residence. When officers entered the Residence, they encountered and detained Wang as she walked out of the only bedroom in the house that appeared to be occupied. Wang claimed ownership of the Residence as well as a marijuana grow located at 29225 Dustin Road, Henryetta, Oklahoma (the Grow). Corroborating this information, during the search, officers found various items of dominion and control showing Wang owned or lived at the Residence and the Grow. Officers also found drug ledgers written in Chinese in the bedroom occupied by Wang. There was no evidence that suggested the marijuana was packaged for the legal sale to a medical marijuana dispensary. OBN Agents confirmed that the marijuana and its storage at the Residence was not in compliance with OMMA and OBN regulations or state law regarding medical marijuana.

14. Your affiant advised Wang of her *Miranda* rights and then she agreed to talk. Wang admitted to being the owner of the Grow and stated that OMMA and OBN had issued a license for the Grow. Wang admitted that the marijuana from the Grow was not distributed to a licensed medical marijuana dispensary as required by law. Wang pretended to not speak English when your affiant asked if the marijuana was being shipped out of state. The interview concluded and Wang was allowed to leave.

15. After the search, Wang contacted your affiant and asked to meet to talk again about the operation. On March 25, 2022, your affiant, Drug Enforcement Administration (DEA) Special Agent Sean Lively, and OBN Agent Yang met with Wang for an interview.

16. Agent Yang, who could speak Mandarin Chinese, read Wang her *Miranda* rights and she agreed to speak with us. Wang admitted that she was part of a nationwide black market marijuana Drug Trafficking Organization (DTO). Wang stated that she worked for an individual whom she referred to as the "Boss." Wang stated that the "boss" had connections to "every" marijuana grow in the state of Oklahoma. Wang stated the boss would receive orders from out of state customers to purchase marijuana in Oklahoma. Wang stated that marijuana that was found in the Residence was from the Grow. Wang told me that the boss rented the Residence from her in essence to pay her for storing the marijuana there. Wang stated the boss would take the customer's order and then contact various grows throughout Oklahoma to see which one could fill the order that he received. Once the numbers were filled, the grows would transport the requested amount to one of several stash locations that the boss had in Oklahoma City. One of those stash locations was Wang's Residence. Once the order was filled and stored at the stash locations, the

boss would arrange to transport the marijuana to the customer. Wang stated that the DTO liked to use individuals who had transporter licenses because it gave them a story or cover if they were stopped in Oklahoma by law enforcement. Wang admitted the marijuana that she grew at the Grow was sold and transported to Texas, North Carolina, South Carolina, Florida, Georgia, and New York.

17. A review of Wangs' OBN and OMMA applications revealed that Wang represented that she is the 100 percent owner of the Grow. However, according to Wang, she has lived in Oklahoma for less than one year. Oklahoma State law requires a seventy-five percent (75%) owner to live in Oklahoma for two years prior to licensing. 63 O.S. § 427.14(E). Thus, Wang is not in compliance with the Oklahoma medical marijuana laws' residency requirement.

18. On April 24, 2022, your affiant as well as agents with OBN executed a search warrant at the Grow. During the search, agents found more than 54,000 marijuana plants in various stages of maturity, about 2,800 pounds of packaged and loose marijuana product, two firearms, approximately $100,000.00 in U.S. Currency, and evidence to support the illegal sales of marijuana. OBN confirmed that the Grow was not operating according to Oklahoma state law and regulations governing medical marijuana.

19. Agents detained more than 20 workers, all of whom were living in deplorable conditions.

20. OBN agents eradicated the plants and your affiant collected and booked approximately 10 pounds of finished product marijuana. The marijuana all appeared to be grown at the Grow and the packaging was consistent with packaged marijuana recovered

from the Residence.

21.  Based on my training and experience, the sheer amount of the more than 3,700 pounds of marijuana (including the marijuana found at the Residence), plus the manner in which it was packaged is consistent with the distribution rather than personal use. The more than 3,700 pounds of marijuana is well in excess of 1,000 kilograms.

Based on the foregoing facts, I submit there is probable cause to believe that Wang knowingly and intentionally possessed with intent to distribute 1,000 kilograms or more of a substance or mixture containing a detectable amount of marijuana within the Western District of Oklahoma, in violation of 21 U.S.C. § 841(a)(1).

Chad Vontungeln
Task Force officer
Federal Bureau of Investigation

SWORN AND SUBSCRIBED before me~~~~~~~, this 7th day of June, 2022.

GARY M. PURCELL
United States Magistrate Judge
Western District of Oklahoma